UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:08CR 131 SNLJ |
| ) | |
| TIMOTHY M. DRAKE, ) | |
| ) | |
| Defendant(s). ) | |

**REPORT AND RECOMMENDATION**

The defendant, Timothy M. Drake, has filed Defendant's Motion to Suppress Evidence and Statements (Document #19). The government has filed Government's Response to Defendant's Motion to Suppress Evidence and Statements (Document #20). Following an evidentiary hearing, a transcript of the hearing was ordered and filed.

In his motion to suppress, the defendant asks that the court suppress any physical evidence seized from the person or possession of the defendant on May 15, 2008, and any oral or written statements made by the defendant.

**Factual Background**

On May 15, 2008, a search was conducted at the residence of Defendant Timothy M. Drake at 25 Village Drive, Apartment #2, in Cape Girardeau, Missouri, pursuant to a search warrant issued by the Honorable Gary A. Kamp, Associate Circuit Court Judge, Cape Girardeau County, Missouri, on May 7, 2008. The search warrant was for controlled substances and related items, including: any controlled substances, paraphernalia or items used in the ingestion or distribution or sale of controlled substances; address, telephone books and other papers pertaining to the occupants of the home;

records relating to the transportation, ordering, purchase and distribution of controlled substances; bank statements, records and other financial documents; United States currency; and indicia of occupancy.

Included among the items seized pursuant to the search warrant were:

(1) One (1) zip-loc bag with white residue located inside nightstand in the bedroom.

(2) One (1) empty box of Aguila 9 millimeter Luger 115 grain fifty (50) round ammunition box located inside drawer in nightstand in bedroom.

(3) Loose marijuana located on top of nightstand in bedroom.

(4) Loose marijuana located on top of mirrored dresser in bedroom.

(5) One (1) handwritten note located on top of mirrored dresser in bedroom.

(6) One (1) twenty two (22) caliber CCI round ammunition and typed letter to Timothy Drake from Preyer Law Offices located in gray shoe box on bedroom floor.

(7) Tied clear plastic bag corner containing marijuana, located inside the pocket of black coat hanging on closet door.

(8) Two individual stacks totaling seven thousand one hundred and twenty dollars ($7,120.00) in United States currency located above the closet door frame in bathroom.

(9) Five Hundred dollars ($500.00) United States currency located inside pants pocket of Timothy Drake.

(10) Digital scales located in kitchen cabinet left side of stove.

(11) One (1) notepad located on kitchen counter on the left side of stove.

(12) One (1) notepad located on kitchen counter next to the refrigerator.

(13) One (1) AT&T "Tilt" cellular phone located on the couch in the living room.

(14) One Aguila 9 millimeter (live) round located inside the top kitchen drawer on the left side of stove.

(Search Warrant Return and Inventory introduced at the evidentiary hearing on December 18, 2008, as part of Government's Exhibit 1). A copy of the search warrant, application and affidavit were also introduced as parts of Government's Exhibit 1.

During the execution of the search warrant at Drake's residence, Cape Girardeau Detective Rob Watson directed Officer Roy Rahn's attention to Drake's vehicle parked roadside on a public roadway south of Drake's apartment. Drake's vehicle was identified as a white 1998 GMC sports utility vehicle (SUV), bearing Missouri license number "327-WS9," and registered to Drake and Mary Leonard. Upon looking through the front windows of the vehicle, Officer Rahn observed a marijuana seed on the driver's seat, and pieces of marijuana and seeds lying on the floor board in front of the center console. Officer Rahn checked the door handles of the vehicle and found them to be unlocked. Upon searching the vehicle, Officer Rahn located two firearms inside the head-liner of the vehicle in the rear cargo area. These firearms were photographed, and then seized by Detective Watson. The two firearms discovered by Officer Rahn in Drake's vehicle were a Hi-Point, model C-9, 9 mm. caliber, semi-automatic pistol, bearing no serial number, and a Ruger, model P95DC, 9 mm. caliber, semi-automatic pistol, bearing serial number 312-99101.

Shortly after officers gained admission to Drake's apartment they discovered Drake, another adult, and a small child. Within five minutes after gaining entry to Drake's apartment, Officer Rob Watson served the search warrant upon Drake. Shortly thereafter, Officer Watson advised Drake of his rights pursuant to the Miranda decision. Drake indicated to Officer Watson that he (Drake) understood his rights.

Drake was placed under arrest at his residence and transported to the Cape Girardeau Police Department. When Officer Watson arrived at the Police Department, he asked Drake about the

firearms located inside his vehicle. In response, Drake stated that "he had people after him." Officer Watson subsequently asked Drake if he would provide him with a DNA sample to compare with the firearms found in Drake's vehicle, Drake replied that he needed to speak with his attorney.

On May 23, 2008, a search warrant was issued by the Honorable Gary A. Kamp, Associate Circuit Court Judge, Cape Girardeau County, Missouri, for a DNA sample to be taken by using two buccal swabs to swab the inside of Drake's mouth for DNA. On May 23, 2008, a DNA sample was taken from Drake as authorized by the search warrant. A copy of the search warrant, application, and affidavit were introduced as Government's Exhibit 2.

## Discussion

In Defendant's Motion to Suppress Evidence and Statements, the defendant claims that the search of his residence was not made pursuant to a valid search warrant issued upon probable cause.

## Probable Cause

The United States Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983).

The standard to be used by a judge reviewing the decision to issue a search warrant is different from the standard to be used by the judge who issues the search warrant. As the Supreme Court stated in Gates more fully, Id.:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, 362 U.S., at 271, 80 S.Ct., at 736.

The Supreme Court rejected the prior tests required by <u>Spinelli v. United States</u>, 393 U.S. 410, 898 S.Ct. 584 (1969), finding that "the complex superstructure of evidentiary and analytical rules that some have seen implicit" in the <u>Spinelli</u> decision cannot be reconciled with the fact that many warrants quite properly are "issued on the basis of non-technical, common sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." <u>Id</u>. at 235, 2331. The Court offered the following caution to reviewing courts, <u>Id</u>. at 236, 2331:

> Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of <u>de novo</u> review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." <u>Spinelli</u>, <u>supra</u>, 393 U.S., at 419, 89 S.Ct., at 590. "A grudging or negative attitude by reviewing courts toward warrants," <u>Ventresca</u>, 380 U.S., at 108, 85 S.Ct., at 745, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common sense, manner." <u>Id</u>., at 109, 85 S.Ct., at 746.
>
> Probable cause is
>
> a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in <u>Adams v. Williams</u>, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972): "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity.

<u>Gates</u>, 462 U.S. at 232, 103 S.Ct. at 2329.

The Supreme Court found, 462 U.S. at 231, 103 S.Ct. at 2328, quoting from <u>Brinegar v. United States</u> (citation omitted), that the probable cause standard is a "practical, nontechnical conception" and "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual considerations of everyday life on which

reasonable and prudent men, not legal technicians, act."

As the Supreme Court stated in Gates, our review of the sufficiency of the affidavits should not take the form of a de novo review.

The basis for the application for a search warrant executed on May 15, 2008, at the defendant's residence is contained in the affidavit of Officer Rob Watson of the Cape Girardeau Police Department assigned to the Southeast Missouri Drug Task Force as a narcotics officer.

The affidavit stated that within the past 72 hours Officer Watson made contact with a Confidential Informant (CI) who indicated that he/she had personally purchased a quantity of marijuana inside the target premises located at 25 Village Drive, Apartment 2, in Cape Girardeau, Missouri. The CI indicated that the individual who sold the marijuana to the CI was a black male identified as "Timothy Drake." Based on that information, Officer Watson arranged to have the CI make a controlled buy of marijuana at the premises, 25 Village Drive, Apartment 2, in Cape Girardeau, and the usual precautions of searching the CI and his/her vehicle were taken with the result that nothing of an illegal nature was found. The CI was provided with a quantity of U. S. currency. The CI then engaged in a controlled buy. The CI then emerged from the target premises and returned to a pre-determined location and met Officer Watson. The CI gave Officer Watson a quantity of suspected marijuana. After the CI and his/her vehicle were searched, nothing of an illegal nature was found. The CI told Officer Watson that upon entering the target premises the CI made contact with Timothy Drake, the same individual who had sold marijuana to the CI in the past. The CI exchanged the U. S. currency Officer Watson had provided and Mr. Drake provided the CI with a quantity of marijuana. The CI then left the target premises and returned to a pre-determined location.

The court finds that the information in the affidavit provided Judge Kamp with "a fair

probability that contraband or evidence of crime [would] be found in a particular place." Gates, 462 U.S. at 238, 103 S.Ct. at 2332.

The CI in Officer Watson's affidavit was reliable since he/she admitted he/she had committed a crime in that he/she had stated that the CI had personally purchased a quantity of marijuana inside Mr. Drake's residence identified as 25 Village Drive, Apartment 2, in Cape Girardeau prior to calling Detective Watson. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075 (1971). In addition, "An informant who alleges he is a 'eye witness' to an actual crime perpetrated demonstrates sufficient reliability 'of the person.'" McCreary v. Sigler, 406 F.2d 1964, 1969 (8th Cir. 1969); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329 (1959).

Judge Kamp had probable cause to issue the search warrant. Thus, the search warrant was valid, based upon probable cause. As a result, any evidence seized at the defendant's residence pursuant to the execution of the search warrant was validly seized, is admissible in evidence and should not be suppressed.

### **The Search of Defendant's Vehicle**

As stated in the Factual Background above, Officer Watson directed Officer Roy Rahn's attention to Mr. Drake's vehicle parked on the road south of the defendant's apartment. When Officer Rahn looked through the front windows of the vehicle, Officer Rahn observed a marijuana seed on the driver's seat and pieces of marijuana and seeds lying on the floorboard in front of the center console. The defendant argues in his motion to suppress that it is unlikely that Officer Rahn could see a marijuana seed through defendant's SUV windows as they were tinted.

Asked what he did when he got to the defendant's vehicle Officer Rahn testified that at first he just observed what he could see from outside the vehicle prior to doing a canine search. Rahn

continued,

A. I observed a marijuana seed on the driver's front seat of the vehicle.

Q. And were the windows up? Describe the circumstances surrounding you looking into the vehicle.

A. Doors were shut, windows were up. The windows were tinted. And I used my department issue Mag light to observe the inside of the vehicle.

Q. And could you see into the vehicle with the aid of the flashlight?

A. Yes, sir.

Q. Very clearly?

A. Yes, sir.

Q. Did the tint on the windows in any way obscure your vision in looking through the window?

A. Besides making it somewhat just a little darker, no, I could see clearly into the vehicle.

Q. Despite any tint that it had?

A. Yes, sir.

Q. And what did you see when you looked on the driver's side?

A. On the driver's front seat I observed a marijuana seed.

Q. And what else did you observe from outside the vehicle before ever getting in the vehicle?

A. On the passenger side looking through the front passenger side window I

observed pieces of marijuana and stems and seeds on the -- I guess the hump of the floorboard in the center of the vehicle.

Q. In front of the console?

A. Yes, sir.

Q. And could you see the marijuana and the seeds plainly from the passenger side window?

A. Yes.

Q. Through it with your flashlight?

A. Yes, sir.

Q. Once -- have you had training in the detection and identification of marijuana?

A. Yes, I have.

(Tr. Part I, pp. 57-59).

Although the defendant argued that it was unlikely that Officer Rahn could see a marijuana seed through defendant's SUV windows as they were tinted, as Officer Rahn testified in the excerpt of his testimony above, he used his flashlight to see the marijuana. The observation of the marijuana in plain view gave Officer Rahn probable cause to search the vehicle.

In reviewing what, in specific cases, constitutes probable cause, there are certain considerations to be kept in mind. First of all, Officer Rahn was dealing with an automobile. In United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157 (1982), a key case in the law of search and seizure involving automobiles, the Supreme Court stated at 806-807, 102 S.Ct. at 2163:

> Thus, since its earliest days Congress had recognized the impracticability of securing a warrant in cases involving the transportation of contraband goods. It is this impracticability, viewed in historical perspective, that provided the basis for the

> Carroll decision. Given the nature of an automobile in transit, the Court recognized that an immediate intrusion is necessary if police officers are to secure the illicit substance. In this class of cases, the Court held that a warrantless search of an automobile is not unreasonable.

Secondly, it is important to keep in mind that probable cause to search an automobile requires the same knowledge or information as would support the issuance of a search warrant. As the Court in Ross stated, quoting from Chambers v. Moroni, 399 U.S. 42, 62-64, 90 S.Ct. 1975, 1986-1987: "For constitutional purposes we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Id. The scope of a warrantless search conducted under the automobile exception extends as far as "a magistrate could legitimately authorize by warrant." Ross, 456 U.S., 825. Police may search every part of a vehicle and containers within the vehicle that may conceal the object of the search if they have a generalized belief that the vehicle contains contraband somewhere inside. Id. United States v. Sample, 136 F.3d 562, 564 (8th Cir. 1997).

As the Eighth Circuit stated in Sample, police may search every part of a vehicle and containers within the vehicle that may conceal the object of the search if they have a generalized belief that the vehicle contains contraband somewhere inside. Thus, Officer Rahn was permitted to search the head liner of the vehicle and the rear cargo area where further marijuana or other drugs could be hidden. There he found the firearms, with the possession of which the defendant is charged.

The firearms in the defendant's vehicle were legally seized, are admissible in evidence and should not be suppressed.

## Currency on Defendant's Person

It is not clear from the evidence at what point the defendant was searched and $500.00 in currency was found in his pants pocket. (Tr. Part I, p. 16). If it was after defendant's arrest, the search would have been incident to his arrest. Michigan v. DeFillippo, 443 U.S. 31, 35 (1979). If the seizure of the money was before the arrest, besides other justifications, the money would have been inevitably discovered as part of Mr. Drake's arrest and booking procedure. Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501 (1984); United States v. Johnson, 528 F.3d 575, 580 (8th Cir. 2008). The currency is admissible in evidence.

### Defendant's Statements

The defendant argues that subsequent to his arrest, but without being advised of his Miranda rights, defendant allegedly made a statement to Officer Watson that he "had people after [him]," in response to the officer's questioning of why defendant had the guns. The defendant argues further that any oral or written statements made by the defendant were involuntary, were elicited by coercion and were elicited without the defendant being fully advised of and afforded his rights under the Fifth Amendment.

The evidence is at odds with the defendant's allegations.

Officer Watson advised Mr. Drake of his rights under Miranda. He used a printed card on the back of his clipboard. The printed card was introduced at the evidentiary hearing as Government's Exhibit #3, and Officer Watson read the Miranda warnings he delivered to Defendant Drake into the record. The administering of the warnings was followed by Mr. Drake's indicating that he understood his rights. The Miranda warnings were administered to Mr. Drake immediately after he was read the search warrant. (Tr. Part I, pp. 10-11).

In view of Mr. Drake's being administered the Miranda warnings, defendant's allegation in

his motion to suppress, that the defendant was not given the Miranda warnings, is incorrect. Defendant claimed that because he was not afforded his rights under the Fifth Amendment, his statements were involuntary and inadmissible. As noted , the defendant was afforded the Miranda warnings.

The defendant further argues that his statements were elicited by coercion. There is no evidence to support this allegation. At the residence, defendant was not forthcoming with any information; he was not uncooperative in Officer's Watson's opinion but "was just maybe frustrated, maybe irritated." He did not ask for a lawyer.

In United States v. Meirovitz, 918 F.2d 1376 (8th Cir. 1990), cert. denied, (1991), the Court of Appeals for the Eighth Circuit set out the appropriate test for determining the voluntariness of a confession as "'whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will.' United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989)," 918 F.2d at 1379. In Meirovitz, the Court continued that two factors must be considered in determining whether a suspect's will was overborne and those factors are "'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.' Id. (citing Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515 (1986))."

The evidence adduced at the two suppression hearings did not indicate in any way that the officers tried to exercise any type of coercion.

After the defendant was brought to the Cape Girardeau Police Department, the interview at the police department took place about an hour after the arrest of the defendant at his apartment. (Tr. Part I, p. 26). Officer Watson asked Mr. Drake about the firearms which were found in his vehicle. The defendant's response was "I've got people after me." (Tr. Part I, p. 26). When Officer Watson

asked Mr. Drake if the police could take a DNA sample, the defendant stated that he needed to talk to his attorney. At that point, all questioning ceased. It is clear to the court that Mr. Drake's denial of the request for a DNA sample shows that his will was not overborne. The defendant's statements were voluntary and should not be suppressed.

Finally, the defendant claims that his statements were elicited as a result of an unlawful arrest and are, therefore, inadmissible.

Officer Watson was asked what the basis for his arrest of Mr. Drake was. He responded, "Possession of controlled substance, the cocaine; possession of controlled substance, marijuana; possession of a defaced firearm; and there was also drug paraphernalia there." (Tr. Part I, p. 25).

The defendant's arrest was lawful. His statements were not elicited as the result of an unlawful arrest.

The objects seized from the defendant's apartment were taken pursuant to a valid search warrant issued upon probable cause.

The marijuana and weapons found in the defendant's vehicle were seized as a result of a lawful search based upon probable cause that a crime had been committed, namely, Possession of Marijuana.

Any statements made by the defendant were not the result of coercion or of failure to be advised of his Miranda warnings or as the result of an unlawful arrest.

The physical evidence seized is admissible and should not be suppressed. Defendant's statements were made after he was given the Miranda warnings, were voluntary and are admissible in evidence.

### Probable Cause for Second Search Warrant

Cape Girardeau Assistant Prosecuting Attorney John N. Koester, Jr. sought a second search warrant stating that evidence pertaining to the crimes of Possession of a Controlled Substance and Possession of a Defaced Firearm was presently located in and on the person of Timothy McGraddie Drake, then incarcerated in the Cape Girardeau County Jail in Jackson, Missouri. The application stated further that the evidence to be searched for consisted of a DNA standard to be taken from Timothy McGraddie Drake by using two buccul swabs to swab the inside of his cheek. The application was supported by the affidavit of Detective Rob Watson of the Cape Girardeau Police Department. The affidavit recited the execution of the earlier search warrant on May 15, 2008, on Drake's residence and the seizure of: a zip lock bag containing a small amount of a white powdery substance, which field-tested positive for cocaine; loose marijuana on top of a nightstand; a 9 mm. round of ammunition inside a kitchen drawer; $7,000.00 in currency hidden in a closet door frame in the bathroom; and two 9 mm. handguns which were found in defendant's vehicle, one of which had the serial number defaced.

The affidavit recited further that Timothy M. Drake is a convicted felon.

The affidavit continued that the defendant's DNA genetic code can be determined by swabbing the inside of his cheek for a few seconds. The DNA sample may be compared to DNA that may be located on physical evidence collected during the execution of the search warrant on May 15, 2008.

The affidavit continues that the evidence to be searched for consists of a DNA standard to be taken from Timothy McGraddie Drake by using two buccul swabs to swab the inside of his cheek.

Both the application for the search warrant and the affidavit supporting the application were

submitted to and signed before Cape Girardeau County Associate Circuit Judge Gary Kamp. Judge Kamp, in the body of the search warrant, found that from the sworn allegations presented to him there was probable cause to believe the allegations of the complaint to be true and probable cause for the issuance of a search warrant. This court believes the reference to the "complaint" in the search warrant is a typographical error and actually refers to the application and the supporting affidavit.

The court finds that the information in the application and affidavit provided Judge Kamp with "a fair probability that contraband or evidence of a crime [would] be found" on Mr. Drake's person, that is, in his mouth. Gates, 462 U.S. at 238, 103 S.Ct. at 2332.

The court finds the buccul swabs and the information concerning the DNA of Timothy M. Drake derived from the swabs are admissible in evidence.

**IT IS, THEREFORE, RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements (Document #19) be denied.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

                                                                                   */s/ Lewis M. Blanton*
                                                                                   LEWIS M. BLANTON
                                                                                   UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of April, 2009.